**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ROBERT BOHMBACH and <br> LISA BOHMBACH, <br><br>     Plaintiffs, <br><br> v. <br><br> HENRY SHIVERS, WELLS FARGO <br> EQUIPMENT FINANCE, INC., and <br> PTG LOGISTICS, LLC, <br><br>     Defendants. | No. 1:22-cv-10318-JEK |

## MEMORANDUM AND ORDER ON MOTIONS IN LIMINE

This case involves a June 2019 automobile accident between plaintiff Robert Bohmbach and defendant Henry Shivers, who was, at the time of the accident, driving a tractor trailer and employed by defendant PTG Logistics, LLC. Asserting claims of negligence, respondeat superior, negligent entrustment, and loss of consortium, Mr. Bohmbach and his wife, plaintiff Lisa Bohmbach, seek to recover damages that they allegedly suffered as a result of the accident. In advance of trial, the plaintiffs and defendants have collectively filed eighteen motions in limine. This memorandum and order will address fourteen of those motions. For the reasons that follow, three of the motions—the defendants' motion to preclude references to insurance, the defendants' motion to exclude evidence of Shivers' 2005 criminal conviction, and the plaintiffs' motion to exclude the report and addenda of the defendants' medical expert—will be granted in whole or in part. The remaining eleven motions will be denied or reserved for trial.

**DISCUSSION**

**I.      ECF 76: Defendants' Motion to Exclude Evidence About Prior Car Accidents.**

The defendants move to preclude evidence about Shivers' prior accidents and moving violations. They contend that such evidence is not relevant to his conduct on June 11, 2019, the date of the accident, and that its admission would be unfairly prejudicial pursuant to Federal Rules of Evidence 401 and 403. The plaintiffs counter, and the Court agrees, that this evidence is relevant to their negligent entrustment claim against PTG Logistics.

"[T]o establish a claim for negligent entrustment, the plaintiff must establish that (1) the defendant entrusted a vehicle to an incompetent or unfit person whose incompetence or unfitness was the cause of the plaintiff's injuries; (2) the persons who owned and controlled the vehicle gave specific or general permission to the operator to drive the automobile; and (3) the defendant had actual knowledge of the incompetence or unfitness of the operator to drive the vehicle." *Picard v. Thomas*, 60 Mass. App. Ct. 362, 369 (2004). Shivers' prior car accidents and moving violations are relevant to whether Shivers was "an incompetent or unfit person," and their admission would not be unduly prejudicial. *See, e.g.*, *Peters v. Haymarket Leasing, Inc.*, 64 Mass. App. Ct. 767, 772 (2005) ("There was evidence that Fenelus had had two automobile accidents and two moving violations prior to entering into his agreement with Haymarket, and the jury could conclude therefrom that he was an unfit driver."); *Mitchell v. Hastings & Koch Enters., Inc.*, 38 Mass. App. Ct. 271, 277 (1995) ("Nowak's driving record showed many violations, . . . and the jury could properly conclude from his record that he was an unfit driver."). Because evidence of Shivers' prior automobile accidents and moving violations is relevant and not unfairly prejudicial, the defendants' motion to exclude that evidence will be denied.

**II.**     **ECF 77: Defendants' Motion to Preclude References to Their Insurance.**

The defendants move to preclude references to their insurance. In federal court, the admissibility of insurance policies is governed by Federal Rules of Evidence 403 and 411. *See, e.g.*, *Pinkham v. Burgess*, 933 F.2d 1066, 1072 (1st Cir. 1991). Under Rule 411, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully," but is admissible "for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411. Rule 403 requires that the probative value of relevant evidence be weighed against, among other items, the potential for prejudice and confusion. Fed. R. Evid. 403. The plaintiffs oppose this motion only to the extent that it would bar them from admitting evidence of insurance if the defendants were to testify at trial that "they did not have the ability to pay a judgment against [them] or would need to declare bankruptcy if a judgment was rendered against them." ECF 102, at 1. Accordingly, the defendants' motion to preclude references to insurance will be granted, but the Court will revisit this issue if the defendants so testify, or if the plaintiffs raise another purpose under Rule 411 for admitting evidence about the defendants' insurance. *See Elliott v. S.D. Warren Co.*, 134 F.3d 1, 7-8 (1st Cir. 1998) (acknowledging, without criticism, a district court's decision to exclude evidence of insurance provisions and indemnification under Rules 403 and 411).

**III.**    **ECF 78: Defendants' Motion to Exclude a Post-Accident Report.**

The defendants move to preclude the introduction of a post-accident report that they prepared. They contend that this evidence is inadmissible under Federal Rule of Evidence 407's prohibition against the admission of evidence of subsequent measures that, if taken beforehand, "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407. The argument is unpersuasive. Generally, accident reports and investigations are not barred from admission by

Rule 407. *See Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992); *Hochen v. Bobst Grp., Inc.*, 193 F.R.D. 22, 23-25 (D. Mass. 2000); *see also Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir. 1988). When accident reports have been excluded, it has been because they contain information about remedial or disciplinary actions to be taken or warnings to be issued. *See, e.g., Compl. of Consolidation Coal Co.*, 123 F.3d 126, 136 (3d Cir. 1997) (excluding post-accident memo "caution[ing] all employees to inspect ropes before using them"); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) (excluding evidence of an investigation in which the offending officer admitted to violating city policy and was disciplined for the violation). The accident report in this case, however, does not appear to contain any information beyond a description and diagram of the accident from Shivers' perspective, so it does not qualify for exclusion under Rule 407. *See* ECF 98-4.[1] Nor does the report contain information the probative value of which would, under Rule 403, be substantially outweighed by the danger of misleading the jury or unfair prejudice. Thus, the defendants' motion will be denied.

## IV.   ECF 79: Defendants' Motion to Exclude Evidence About the Prior Condition of the Traffic Light.

The defendants move to preclude testimony or other evidence that there were no prior issues with the traffic light that Shivers allegedly ran before crashing into Mr. Bohmbach. Any such testimony would be "highly speculative," they contend, because, to their knowledge, no one from the Town of Raynham, where the accident occurred, will be testifying at trial. ECF 79, at 1. Record evidence exists, however, to support the proposition that the traffic light was functioning

---

[1] The plaintiffs contend the report is admissible under Rule 801(d)(2)(D) as a statement of party-opponent Shivers, or under Rule 803(6) as a business report of PTG Logistics. But the defendants do not contend that the post-accident report is inadmissible hearsay.

properly before the accident. Mr. Bohmbach testified that he passed that light daily and never previously observed any issues with it. ECF 104-1, at 3-5. And the Raynham police officer who responded to the accident, Shawn Sheehan, similarly testified that he was not aware of any issues syncing the lights at the intersection of the accident in or around June 2019. ECF 104-2, at 4 (Tr. at 118:14-18). If the plaintiffs lay a proper foundation, Mr. Bohmbach and Officer Sheehan may testify to their personal observations of the traffic light at trial. The defendants' motion to preclude testimony that there were no prior issues with the subject traffic light will therefore be denied.

## V.   **ECF 80: Defendants' Motion to Limit Testimony from Plaintiffs' Accident Reconstruction Expert.**

The defendants move to exclude, under Federal Rule of Evidence 702, testimony from the plaintiffs' accident reconstruction expert, Thomas Fitzgerald, that Shivers' use of a Bluetooth headset at the time of the accident may have contributed to his distraction while driving. They contend that Fitzgerald's testimony on this subject is unreliable because headset use while driving is not prohibited by Massachusetts law or by guidelines issued by the Federal Motor Carriers Safety Administration ("FMCSA").

"In applying Rule 702, a district court must principally determine whether the expert's proffered testimony both rests on a reliable foundation and is relevant to the task at hand." *D'Pergo v. Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 111 F.4th 125, 140 (1st Cir. 2024) (quotation marks omitted); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The "'focus' of the inquiry into the admissibility of expert testimony under Rule 702 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Daubert*, 509 U.S. at 595). "*Daubert* made clear that to be admissible under Rule 702, an expert's opinion 'must be supported by appropriate validation' and rest on 'more than subjective belief or unsupported speculation.'" *Id.* (quoting

*Daubert*, 509 U.S. at 590). The relevant inquiry here is whether "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Fitzgerald has over thirty years of experience in crash reconstruction, having worked as a trooper and sergeant in the Commercial Vehicle Safety Enforcement and Collision Analysis and Reconstruction Sections of the Massachusetts State Police, and having served as the chair of the national Commercial Vehicle Safety Alliance Driver Traffic Enforcement Committee. ECF 100-1, ¶ 2. He draws on that experience and his analysis of Shivers' dash camera video to conclude, as relevant here, that (1) empirical research shows that any phone conversation, even one using a hands-free headset, can have "distracting effects," even though hands-free devices are not expressly prohibited by FMCSA guidelines, and (2) Shivers' cellphone conversation immediately preceding the crash "could help explain [Shivers'] delayed response" to the yellow- and red-light traffic signals. *Id.* ¶¶ 11-12, 22.

On these points, Fitzgerald's testimony, which relies on empirical research and a methodical analysis of the dash camera video, is reliable and will be helpful to the jury. *See DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988) (admitting testimony of an expert who had 23 years of experience in the relevant field and familiarity with the applicable industry principles). The defendants' sole critique of Fitzgerald's proposed testimony—that state law and FMCSA guidelines do not prohibit the use of headsets while driving—does not undermine the reliability of Fitzgerald's methods or testimony. And, appropriately, Fitzgerald does not propose to testify that Shivers *was* distracted immediately before the accident. Thus, Fitzgerald will be allowed to testify at trial that (1) in general, research shows that cellphone conversations while

driving, including those with headsets, can distract drivers, and (2) based on his review of the research and the dash camera video, Shivers' cellphone conversation could help explain his delayed response to the yellow- and red-light traffic signals immediately preceding the crash. The defendants' motion to exclude Fitzgerald's testimony will, accordingly, be denied.

**VI.    ECF 81: Defendants' Motion to Limit the Testimony of Plaintiffs' Vocational Expert.**

The defendants move under Federal Rule of Evidence 702 to preclude the plaintiffs' vocational expert, Paul Blatchford, from testifying about three topics: (1) Mr. Bohmbach's physical restrictions, (2) Mr. Bohmbach's ability to concentrate, and (3) whether Mr. Bohmbach has transferrable skills after the accident. They contend that Blatchford is not qualified to testify about Mr. Bohmbach's physical restrictions and concentration level, and that his opinion on those two points is based on speculation and subjective evidence from Mr. Bohmbach. The Court disagrees. Blatchford has worked as a vocational consultant for forty years and has conducted comprehensive vocational evaluations using industry standard assessments. *See* ECF 81-1, at 1-6. In preparing his May 2023 report, Blatchford reviewed Mr. Bohmbach's medical records and administered to Mr. Bohmbach various standardized vocational tests that "meet the standards set by the United States Department of Labor." ECF 99-1, at 1-3, 10. These tests evaluated, among other things, Mr. Bohmbach's vocational abilities and physical limitations. *Id.* at 12-16. The tests also evaluated Mr. Bohmbach's intelligence and his aptitude in math, reading, and spelling, each of which yielded information about Mr. Bohmbach's ability to concentrate. *Id.* at 10-12. Blatchford's report explains that his methodology "is one commonly used in . . . the applied discipline of rehabilitation counseling, by vocational rehabilitation professionals." *Id.* at 2. Thus, his "proffered scientific knowledge is both reliable and relevant." *United States v. Phillipos*, 849 F.3d 464, 470 (1st Cir. 2017) (citing *Daubert*, 509 U.S. at 597).

The defendants also argue that Blatchford's opinion about Mr. Bohmbach's lack of transferable skills is unreliable. This argument fares no better. As a trained vocational expert certified by the American Board of Vocational Experts, Blatchford has extensive experience observing and analyzing an individual's employment capacity. ECF 81-1, at 1-6. The shortcomings the defendants perceive in Blatchford's opinions, including his failure to conduct a formal transferrable-skills analysis, bear on weight, rather than admissibility, and can be addressed at trial. *See Currier v. United Techs. Corp.*, 393 F.3d 246, 252 (1st Cir. 2004) ("[W]eakness in [an expert's] analysis [is] a matter of weight rather than admissibility and thus properly a subject of argument and jury judgment."). The motion to exclude certain testimony from Blatchford will therefore be denied.

## VII.    ECF 82 and 87: Parties' Motions Regarding Shivers' 2005 Conviction.

The plaintiffs move to include, while the defendants move to exclude under Federal Rules of Evidence 403 and 609, evidence of Shivers' 2005 conviction for illegal possession of a firearm. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 609, which governs impeachment by evidence of a criminal conviction, similarly states that evidence of a criminal conviction for a crime like this one that is more than ten years old is admissible if, among other things, "its probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The plaintiffs contend that the conviction is admissible to show Shivers' incompetence for purposes of the negligent entrustment claim because, in their view, if Shivers cannot comply with criminal laws, he cannot follow the rules of the road. Shivers' nineteen-year-old conviction is not, however, relevant to the conduct at issue in this case or probative of his

8

honesty. *See* Fed. R. Evid. 609(a)(2). Admitting the conviction would, moreover, be unduly prejudicial to the defendants. Because evidence of the conviction is inadmissible under Rules 403 and 609, the plaintiffs' motion to include that evidence will be denied, and the defendants' motion to exclude that evidence will be granted.

## VIII.   ECF 83: Defendants' Motion to Preclude Plaintiffs from Appealing to Jurors' Sense of Public Duty.

The defendants move to preclude attempts by the plaintiffs to appeal to the jury's sense of public duty by excluding testimony or argument that (1) certain standards of practice are "safety rules" that must be followed to protect the public; (2) the defendants present a threat to the public; and (3) the jury must find them negligent to protect the community. To support this motion, the defendants rely on case law concerning the "Golden Rule" and "reptile tactics." ECF 83, at 2. The "Golden Rule prohibits attorneys from suggesting that jurors place themselves in the shoes of the plaintiff," a practice that "'has been universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on evidence.'" *Burnett v. Ocean Props., Ltd.*, 987 F.3d 57, 75 (1st Cir. 2021) (quoting *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir. 2010)). The term "reptile tactics" refers to lawyers' attempts "to 'appeal to the primitive, reptilian portions of jurors' brains, which will cause them to decide cases based on a subconscious desire to protect themselves and their loved ones from the danger posed by the allegedly negligent behavior of any defendant.'" *Guzman v. Boeing Co.*, 366 F. Supp. 3d 219, 247 (D. Mass. 2019) (citation omitted).

Neither doctrine warrants the requested relief. The defendants' first requested exclusion—concerning evidence involving "safety rules"—is vague and overbroad. The defendants do not specify what they mean by evidence concerning "safety rules," but testimony on rules governing traffic lights, including rules requiring drivers to stop at red lights, is relevant to the plaintiffs'

9

claims. *See* ECF 105, at 3 (citing M.G.L. c. 89, § 8; 700 C.M.R. § 9.06(10)(f)). The defendants'

other two requested exclusions are hypothetical and premature; the defendants cite no basis for

their concern that the plaintiffs may invoke such testimony or make those arguments. To the extent

those issues arise at trial, the defendants can raise an objection then. *See Rosas v. GEICO Cas.*

*Co.*, No. 18-cv-1200-APG-NJK, 2022 WL 2439575, at *1 (D. Nev. Jan. 26, 2022) (denying motion

in limine concerning reptile tactics as "both too broad and too vague" and collecting cases holding

the same); *Paul v. W. Express, Inc.*, No. 20-cv-51, 2023 WL 2717081, at *1 (W.D. Va. Mar. 30,

2023) (similar). The defendants' motion to preclude attempts to appeal to the jury's sense of public

duty will therefore be denied.

**IX.**      **ECF 84: Plaintiffs' Motion to Exclude Evidence of Collateral Source Income.**

The plaintiffs move to preclude the defendants from offering any evidence of collateral

source income. In federal court, the applicable "evidentiary strand of the collateral source rule"

provides that "[e]vidence of collateral benefits offered to show that an [individual] has already

received compensation for his injuries is generally inadmissible." *England v. Reinauer Transp.*

*Cos., L.P.*, 194 F.3d 265, 273 (1st Cir. 1999) (quotation marks omitted). "When such evidence is

relevant to some other contested issue, however, it may be admitted if it is not unfairly prejudicial."

*Id.* at 274. The defendants seek to introduce Mr. Bohmbach's workers' compensation disability

benefits as evidence that he "was malingering, i.e., feigning physical disability to avoid work and

to continue receiving disability payments." *McGrath v. Consol. Rail Corp.*, 136 F.3d 838, 840 (1st

Cir. 1998). The plaintiffs counter that such evidence would be unfairly prejudicial because a jury

could improperly "deduct from the appropriate award whatever compensation [he] is receiving for

injuries from a source other than a liable defendant." *Crowther v. Consol. Rail Corp.*, 680 F.3d 95,

98-99 (1st Cir. 2012).

The Court agrees with the defendants. The First Circuit has repeatedly permitted the admission of disability benefits to show malingering when a qualifying jury instruction is given. *See McGrath*, 136 F.3d at 841 (finding no abuse of discretion where disability payments were admitted "to show [the plaintiff's] lack of motivation for returning to work" and the court "issued cautionary instructions to the jury, advising it to consider the evidence only on the issue of malingering"); *DeMedeiros v. Koehring Co.*, 709 F.2d 734, 740-41 (1st Cir. 1983) (affirming admission of weekly disability benefits with "a curative instruction" that "such evidence would be relevant to [the plaintiff's] motivation in declining employment and would be admitted for that limited purpose"). Because the probative value of evidence of collateral source income outweighs the danger of unfair prejudice under Rule 403, the Court will permit the admission of such evidence with a cautionary jury instruction. Accordingly, the plaintiffs' motion to preclude evidence of collateral source income will be denied.

## X.     ECF 85: Plaintiffs' Motion to Exclude the Report and Addenda Prepared by Defendants' Medical Expert.

The plaintiffs move to exclude the written report and addenda of the defendants' medical expert, Dr. Stephen Saris, as inadmissible hearsay under Federal Rule of Evidence 801(c). *See* ECF 85; ECF 88-2 (Dr. Saris' report). Whether the report is inadmissible hearsay is governed by the Federal Rules of Evidence, not state law, as the defendants contend. *See* ECF 94 (relying on M.G.L. c. 233, § 79G); *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 539 (1st Cir. 2019); Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."). And under those rules, an expert "report is a quintessential example of hearsay" where it is proffered "for the truth of the matter" asserted. *Jones ex rel. U.S. v. Mass. Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015) (upholding as inadmissible an expert report at trial). The

defendants do not contend that they seek to offer Dr. Saris' report into evidence for a permissible

reason, such as impeachment. *See Santiago v. Costco Wholesale Corp.*, No. 19-cv-1082-SCC,

2022 WL 767045, at *4 (D.P.R. Mar. 14, 2022) (expert reports are not "categorically exclude[d]"

and "may be admitted into evidence" for another purpose like impeachment). The plaintiffs'

motion to exclude Dr. Saris' report will therefore be granted.

**XI.** **ECF 86: Plaintiffs' Motion to Exclude the Testimony and Opinions of Defendants' Vocational Expert.**

The plaintiffs move to exclude the testimony of the defendants' vocational expert, Nancy

Segreve, pursuant to Federal Rule of Evidence 702. They first contend that her testimony is

unreliable because she never personally examined Mr. Bohmbach. Federal Rule of Evidence 703,

however, allows an expert to base her "opinion on facts or data in the case that the expert *has been*

*made aware of or personally observed*." Fed. R. Evid. 703 (emphasis added). The Supreme Court

has recognized that "[u]nlike an ordinary witness, . . . an expert is permitted wide latitude to offer

opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509

U.S. at 592. Many courts have accordingly upheld "an expert's reliance on medical records, even

absent personal examination." *von Hirsch v. Olson*, No. 21-cv-107-NT, 2022 WL 1046266, at *3

(D. Me. Apr. 7, 2022) (citing *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000),

*Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998), and *In re Paoli R.R. Yard PCB*

*Litig.*, 35 F.3d 717, 762 (3d Cir. 1994)). This Court agrees. Segreve's testimony rests on a reliable

foundation because she adequately evaluated his medical records in forming her opinions, even

though she did not physically examine Mr. Bohmbach.

The plaintiffs next argue that Segreve is unqualified because she relied solely on Dr. Saris'

expert report, and overlooked the reports of their experts, in forming her opinions. The record

establishes that she is qualified. Segreve has been a vocational consultant for over thirty years and

holds numerous certifications, including as a Massachusetts-approved vocational rehabilitation provider. ECF 96-1, at 2. Segreve's August 2023 report details the various records that she reviewed, which include, but are not limited to, Dr. Saris' report. ECF 96-2, at 3-5, 10. The plaintiffs suggest that Segreve ignored certain evidence to reach her conclusion that "Mr. Bohmbach is capable of returning to work either in his prior occupation . . . or in jobs at the sedentary to light physical demand level." *Id.* at 9. But such qualms with her report are appropriately resolved at trial through "the adversary process" with "competing expert testimony and active cross-examination." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). Because Segreve is a qualified expert whose opinions are reliable and relevant, the plaintiffs' motion to exclude her testimony will be denied.

**XII.   ECF 88: Plaintiffs' Motion to Exclude the Testimony and Opinions of Defendants' Medical Expert.**

The plaintiffs move to exclude the testimony and opinions of the defendants' medical expert, Dr. Stephen Saris, under Federal Rule of Evidence 702. They advance three reasons why, in their view, Dr. Saris' opinions are unreliable: (1) he never physically examined Mr. Bohmbach, instead relying on Mr. Bohmbach's medical records to form his opinion; (2) his opinion is contrary to that of other medical professionals; and (3) he did not consider the factual assertions in Mr. and Ms. Bohmbach's deposition testimony when forming his opinion. None of these arguments warrant exclusion of Dr. Saris' opinions and testimony.

First, as described, an expert's "reliance on medical records, even absent personal examination, does not render expert testimony inadmissible." *Olson*, 2022 WL 1046266, at *3; *see also Rodríguez*, 91 F.4th at 66-67 (holding that the testimony of a medical expert whose "'opinions [were] based on [certain enumerated] medical records and documents'" was admissible under Rule 702). Whether it would have been preferable for Dr. Saris to personally examine Mr. Bohmbach

is an argument that goes to the weight of his testimony, not its admissibility. *See Rodríguez*, 91 F.4th at 71-72 ("[Q]uestions about the strength of the factual underpinning of an expert's opinion are matter[s] affecting the weight and credibility of the testimony and therefore a question to be resolved by the jury." (quotation marks omitted)).

Second, Dr. Saris' opinion and testimony will not be excluded because he disagrees with the opinions of Mr. Bohmbach's treating physicians, the plaintiffs' experts, or the Social Security Administration's disability determination in some cases. *See Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006) ("The mere fact that two experts disagree is not grounds for excluding one's testimony."). The evidence that, in the plaintiffs' view, contradicts Dr. Saris' opinion is not so overwhelming as to render his opinion unreliable under *Daubert*. *Compare* ECF 88, at 3-7 (describing the evidence underlying other medical professionals' opinions), *with* ECF 97, at 4-5 (discussing the evidence underlying Dr. Saris' opinion), *and* ECF 88-2, at 5-17 (Dr. Saris' description of the medical facts).

Finally, Dr. Saris' decision not to account for Mr. Bohmbach's alleged "[black]out" and "head strike" in forming his opinion does not render his testimony about these or other subjects about which he intends to testify inadmissible. ECF 88, at 8-9; *see Daubert*, 509 U.S. at 595-97. As with his reliance on medical records without personal examination, the comprehensiveness of the factual basis for Dr. Saris' opinion goes to "the weight and credibility of the testimony," not to its admissibility. *Rodríguez*, 91 F.4th at 71 (quotation marks omitted). The plaintiffs may, of course, cross-examine Dr. Saris as to any inconsistencies between his opinion and the facts articulated in their depositions if he testifies at trial. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Likewise, Dr. Saris may be cross-examined about his opinions, based on his review of medical records from 2009 and 2012, that Mr. Bohmbach was experiencing back pain before the accident. The plaintiffs' motion to exclude Dr. Saris' testimony and opinions will therefore be denied.

**XIII.**   **ECF 89: Plaintiffs' Motion to Exclude Testimony That the Traffic Light Was Malfunctioning at the Time of the Accident.**

The plaintiffs move to exclude, under Federal Rule of Evidence 403, testimony that the traffic light was malfunctioning at the time of the June 2019 accident. To support their contention that no reliable evidence exists that the light was malfunctioning, the plaintiffs highlight Shivers' statement in the dash camera video that he ran a red light, which he repeated to Mr. Bohmbach and Officer Sheehan. ECF 89-4, at 3 (Tr. at 78:12-18); ECF 89-5, at 3 (Tr. at 70:10-12). The defendants, on the other hand, contend that the same dash camera video shows at two points— 4.25 seconds and 1.5 seconds before the crash—that the traffic light in the right lane was not illuminated red. The plaintiffs' accident reconstruction expert, Thomas Fitzgerald, agreed that that the red light did not appear illuminated at the 4.25 seconds mark. ECF 95-2, at 24 (Tr. at 88:12-16). Fitzgerald added, however, that "the issue about the traffic signal [could] basically be explained by poor video quality and not a malfunctioning traffic light." *Id.* (Tr. at 89:21-24).

Whether the red light was malfunctioning is a question of fact to be resolved by the jury. Argument and evidence about the traffic light malfunctioning will neither "confus[e] the issues" nor "mislea[d] the jury," which can weigh the record evidence, including the dash cam video, for itself. Fed. R. Evid. 403. Accordingly, the plaintiffs' motion to exclude testimony that the traffic light was malfunctioning at the time of the accident will be denied.

15

## CONCLUSION AND ORDER

For the foregoing reasons, ECF 77, 82, and 85 are GRANTED, while ECF 76, 78, 79, 80,

81, 83, 84, 86, 87, 88, and 89 are DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: October 16, 2024